FILED

2013 FEB 20  AM 11: 40

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville Division

JENNIFER UNDERWOOD,

    Plaintiff,

v.

JIM MANFRE, in his official
capacity as Sheriff for Flagler
County, Florida, and FLAGLER
COUNTY, FLORIDA,

    Defendants.

No. 3:13-cv-192-J-99 MMH-TEM

**Class Action**

**Injunctive Relief Sought**

_____/

## COMPLAINT

Plaintiff JENNIFER UNDERWOOD, all on behalf of herself and all others similarly situated, sues Defendant JIM MANFRE in his official capacity as Sheriff for Flagler County, Florida ("Sheriff" or "Manfre") and FLAGLER COUNTY, FLORIDA ("County"), and alleges as follows:

### INTRODUCTION

1. Jennifer Underwood is married to Thomas Underwood, who is an inmate in the Flagler County, Florida Jail ("Jail"). Sheriff Manfre runs the Jail and enforces restrictive policies and practices governing inmate mail that adversely affect Jennifer Underwood's ability to effectively communicate with her husband.

Sheriff Manfre will not deliver letters or messages enclosed in envelopes to inmates from their family and friends. Instead, family and friends, like Jennifer Underwood, must write to inmates on approved postcards. Additionally, Sheriff Manfre will not mail messages from inmates that contain "obscene language" (including ordinary swear words) or letters that exceed two sheets of paper. Thus, Jennifer Underwood cannot receive her husband's uncensored speech as she desires.

2. The Sheriff's inmate mail policies impermissibly restrict Jennifer Underwood's ability to send and receive communications from Jail inmates like her husband, in violation of the First and Fourteenth Amendments to the United States Constitution. Jennifer Underwood asks this Court to enjoin the Sheriff's policies, award nominal damages, and declare that they violate the constitutional rights of all Jail inmates' correspondents.

## JURISDICTION AND VENUE

3. Plaintiff brings this action pursuant 42 U.S.C. §1983 for violations of civil rights under the First and Fourteenth Amendments to the United States Constitution.

4. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343(a)(3) (civil rights).

5. Venue is proper in this judicial district and division pursuant to 28 U.S.C. §1391(b) and M.D. Fla. Loc. R. 1.02. Defendant Manfre and Flagler County reside in this district and division, and the unlawful practices that give rise to the claims herein occurred within this district and division.

## PARTIES

6. Plaintiff Jennifer Underwood is married to Thomas Underwood, who is an inmate in the Flagler County Jail. Together, they have two sons, ages six and four, and are expecting a third son. Thomas Underwood has been in Jail since December 20, 2012. He is awaiting trial and being held pre-sentence. As set forth in the "General Allegations" section, Jennifer Underwood has been, and continues to be, deprived of constitutional rights as a result of the Sheriff's policies and practices.

7. Defendant Sheriff Jim Manfre is now, and at all material times has been, the Sheriff of Flagler County, Florida. He assumed office in early 2013 and adopted the material policies and practices of his predecessor. As Flagler County Sheriff, he is charged with the care and custody of inmates at the Flagler County Jail. He exercises overall responsibility for the policies and practices of the Jail, including the challenged policies. Plaintiff sues Manfre in his official capacity for nominal damages, injunctive and declaratory relief, and attorneys' fees and costs.

8. Defendant Manfre at all times relevant hereto was acting and continues to act under color of law.

9. Jail correctional officers, deputies, and their supervisors, working in the Jail are agents and employees of Sheriff Manfre.

10. Defendant Flagler County, Florida, appropriates funds for the Sheriff's expenditures including expenses related to the operation and maintenance of the Jail. Any judgment against the Sheriff will necessarily become the responsibility of Flagler County to pay. The County is liable for the Sheriff's policies and practices relevant to the Jail because it directed the Sheriff to operate and manage the Jail and it delegated final decision making authority to him to oversee the Jail's operation.

## GENERAL ALLEGATIONS

11. The Flagler County Jail is located in Bunnell, Florida. It houses both convicted prisoners and pretrial detainees. Approximately 140 inmates are detained in the Jail at any one time.

12. Since at least January 2011, the Sheriff has and continues to maintain a policy and practice that requires all incoming mail sent to Jail inmates, except legal or privileged mail, to be in a postcard form (hereinafter "Postcard-Only Mail

Policy"). The Sheriff requires that the postcards comply with specified characteristics such that the only acceptable postcards are those purchased from the United States Postal Service (USPS) with pre-printed postage. Pursuant to the Postcard-Only Mail Policy, the Sheriff prohibits inmate correspondents like Jennifer Underwood from mailing to Jail inmates letters, cards, photographs, full-page drawings, newspaper and magazine clippings, photocopied materials, and pages printed from an internet webpage. Only mail to or from the courts, attorneys, government officials or agencies, and news media is considered legal or privileged (hereinafter collectively "privileged"). The Postcard-Only Mail Policy is reflected in the written Inmate Mail policy (CD No. 12.02), last revised on April 4, 2012.

13. Additionally, at all material times the Sheriff has and continues to maintain a policy and practice that prohibits Jail inmates from sending outgoing letters that exceed two sheets of paper and all outgoing mail that contains "obscene language" (hereinafter "Outgoing Mail Censorship Policy"). "Obscene language" includes ordinary swear words. This policy is reflected in the Sheriff's *Refused Inmate Mail Notification* form and the *Detention Facility Inmate Rules and Regulations* inmate handbook.

14. Sheriff Manfre enforces these challenged policies and practices by refusing to deliver inmate mail that does not conform to them.

15. Jail inmates and their friends and family have few alternatives to mail by which to communicate privately and freely. Telephone calls from Jail inmates in the housing areas are limited to collect telephone calls, which are very expensive, and Jail inmates are given limited opportunities to make them. Fellow inmates may easily overhear these telephone calls, which are made in a common area with a row of telephones. Family and friends may only visit inmates on a given day of the week, which prevents many friends and family with a conflict during this time period from visiting at all. Friends and family who do not live near the Jail cannot easily visit Jail inmates. Children under 12 years of age, like Jennifer Underwood's sons, cannot visit Jail inmates. When family and friends can visit a Jail inmate, they speak over a telephone to each other in ways that may be overheard by other inmates or visitors. For all these reasons, mail correspondence for many Jail inmates and their family and friends is the most feasible, practical, and private way to communicate and maintain a relationship.

16. The Postcard-Only Mail Policy impermissibly curtails the ability of Jail inmates' correspondents to express themselves to Jail inmates. Postcards allow correspondents significantly less writing space than letters—thus increasing

the total cost to send a message of the same length. The Postcard-Only Mail Policy prevents correspondents from fully expressing their thoughts. Instead, correspondents must express these messages in an abbreviated and incomplete form as there is insufficient room on the postcard to fully develop and communicate the inmates' thoughts and ideas. The Postcard-Only Mail Policy prevents Jail inmates from receiving these fully developed and complete messages from their friends and family.

17. In addition, the postcards expose the content of the correspondents' communications to anyone who handles, processes, or views the postcards, both within the jail and before the postcards arrive at the jail. Prior to the Postcard-Only Mail Policy, correspondents regularly wrote letters to Jail inmates that contained sensitive information, including medical, spiritual, intimate, and financial information. Because these letters were enclosed in envelopes and only subject to review by a Sheriff's deputy, Jail inmates and their correspondents felt confident that this sensitive information would not be exposed for others to see, including postal carriers. The Postcard-Only Mail Policy has forced correspondents to either abandon including sensitive information in their non-privileged correspondence or risk divulging confidential, sensitive information to unknown third-parties who can easily intercept these messages on postcards. Including sensitive financial information on a postcard increases the chance that the Jail inmate or the

correspondent may become a victim of identity theft or fraud. The Postcard-Only Mail Policy either chills correspondents from writing about sensitive matters entirely, or it requires them to expose their communications to a host of strangers or unintended recipients.

18. Jennifer Underwood has been, and continues to be, deprived of constitutional rights as a result of Sheriff Manfre's Postcard-Only Mail Policy and the Outgoing Mail Censorship Policy.

19. Jennifer Underwood would like to share in a letter to her husband sensitive, personal information, like religious and medical information. She would like to send him recent family photographs, her sons' drawings, bible scriptures, newspaper and magazine clippings, photocopied materials, and pages printed from an internet webpage. She would like to share fully developed and complete thoughts. However, she cannot do so as a result of the Sheriff's Postcard-Only Mail Policy. But for the Sheriff's policy, she would immediately send these letters and enclosures.

20. Jennifer Underwood would like to receive from her husband, and her husband would like to send, messages even if they contain "obscene language." Thomas Underwood mailed one message that the Sheriff asserted contained "obscene language" and the Sheriff intercepted it and refused to deliver it. Jennifer

Underwood wanted to receive that message. Jennifer Underwood would like to receive from her husband, and her husband would like to send, letters that exceed two sheets of paper. However, she cannot do so as a result of the Sheriff's Outgoing Mail Censorship Policy. But for the Sheriff's policy, Thomas Underwood would immediately send these letters and mail and Jennifer Underwood would receive them.

21. Jennifer Underwood has no other way to either send or receive mail from Jail inmates, including her husband, but through Sheriff Manfre.

22. The Sheriff's mail policies have, continue, and will continue to inhibit, infringe, limit, chill, suppress, and interfere with the Jennifer Underwood's and other similarly situated inmate correspondents' constitutionally-protected communications between inmates and correspondents or intended correspondents.

23. Jennifer Underwood and other similarly situated inmate correspondents have suffered and will continue to suffer an injury as a result of the Sheriff's inmate mail policies. Sheriff Manfre caused and will continue to cause this injury. The policies infringe on the U.S. Constitution's First Amendment free speech rights of Plaintiff to communicate in a complete and meaningful way with her inmate husband.

24. Sheriff Manfre has acted and threatens to continue acting under color of state law to deprive Plaintiff of her constitutional rights. Plaintiff faces a real and immediate threat of irreparable injury as a result of these actions and threatened actions of Sheriff Manfre and the existence, operation, and threat of enforcement of the Postcard-Only Mail Policy and the Outgoing Mail Censorship Policy.

25. Absent intervention by this Court, Plaintiff will suffer injury as a result of the Sheriff's unconstitutional practices. Plaintiff has no adequate remedy at law for the denial of her fundamental constitutional rights.

26. In depriving Plaintiff of these rights, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983.

## CLASS ACTION ALLEGATIONS

27. Jennifer Underwood brings this action on behalf of herself and all others similarly situated, pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.

28. The Plaintiff seeks to represent a class defined as "all current and future friends, family, or correspondents of inmates incarcerated or detained in the Flagler County, Florida, Jail."

29. The proposed class is so numerous and so fluid that joinder of all members is impracticable and uneconomical. Over two thousand persons are admitted to the Jail annually. The identity of these inmates' friends, family, and potential correspondents changes daily. The average Jail inmate population is around 140 and the approximate size of the class is three times this—over three-hundred persons at a time.

30. There are questions of law and fact common to the members of the Plaintiff Class. The same policies and practices apply to all class members. The question common to all members of the Plaintiff Class is what justification Sheriff Manfre has for maintaining his Postcard-Only Mail Policy and Outgoing Mail Censorship Policy and whether these reasons justify the specific free-speech restrictions of the Plaintiff Class. These common questions predominate.

31. Jennifer Underwood's claims are typical of the claims of the members of the class. Jennifer Underwood has suffered injuries similar in kind and degree as to the class. Her claims raise questions of fact and law common to the class. Her injuries arise from the same conduct as the class injuries. Jennifer Underwood seeks a permanent injunction to end the unlawful policy and practices as the class would desire.

32. Ms. Underwood will fairly and adequately protect the interests of the class. Ms. Underwood has no interest that is now or may be potentially antagonistic to the interests of the class. Ms. Underwood understands the duties and responsibilities of serving as class representatives. Ms. Underwood is represented by attorneys employed by or working in cooperation with the ACLU Foundation of Florida, and the Florida Justice Institute, which have extensive experience in class action cases involving federal civil rights claims for inmates. The same attorneys successfully represented a class of inmates at the Santa Rosa County, Florida, jail in their challenge of a similar postcard-only inmate mail policy.

33. The Sheriff has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## COUNT 1: FREE SPEECH

(Class Claim – Postcard-Only Mail Policy)

34. Plaintiff realleges and incorporates by reference paragraphs 1 through 33 above.

35. The Sheriff has deprived, and continues to deprive, Plaintiff of her rights, and the rights of all others similarly situated, under the First Amendment to the United States Constitution, which are secured through the Fourteenth Amendment. The Sheriff's Postcard Only Mail Policy is the cause in fact of the constitutional violation.

36. Unless restrained by this Court, the Sheriff Manfre will continue to enforce the Postcard Only Mail Policy. Plaintiff and the putative class have been and will continue to be irreparably harmed by the Sheriff's denial of their fundamental constitutional right to free speech.

## COUNT 2: FREE SPEECH

(Class Claim – Outgoing Mail Censorship Policy)

37. Plaintiff realleges and incorporates by reference paragraphs 1 through 33 above.

38. The Sheriff has deprived, and continues to deprive, Plaintiff of her rights, and the rights of all others similarly situated, under the First Amendment to the United States Constitution, which are secured through the Fourteenth Amendment. The Sheriff's Outgoing Mail Censorship Policy is the cause in fact of the constitutional violation.

39. Unless restrained by this Court, the Sheriff will continue to enforce the Outgoing Mail Censorship Policy. Plaintiff and the putative class have been and will continue to be irreparably harmed by the Sheriff's denial of their fundamental constitutional right to free speech.

## COUNT 3: EQUAL PROTECTION

(Individual Claim – Incoming Mail Policy)

40. Plaintiff realleges and incorporates by reference paragraphs 1 through 33 above.

41. Neither Jennifer Underwood nor Thomas Underwood is an active military service member.

42. The Sheriff will deliver letters to Jail inmates that are sent by active military service members. This is an exception to the Sheriff's general prohibition on incoming letters. The Sheriff will not deliver letters to Jail inmates that are sent by persons who are not active military service members ("civilians").

43. Both active military service members and civilians who want to correspond with Jail inmates are similarly situated as they are not incarcerated and pose the same possible threats to internal order and discipline and institutional security.

44. The Sheriff treats active military service members differently than civilians in order to grant a benefit to active military service members (and their inmate correspondents) and withhold benefit from and discriminate against civilians (and their inmate correspondents). This disparate treatment is intentional,

arbitrary, capricious and not rationally related to any legitimate government interest.

45. As a result of this differential treatment, Jennifer Underwood cannot write a letter to her husband. If Jennifer Underwood were an active military service member, the Sheriff would allow her to write Thomas Underwood a letter, she would write him a letter, and he would receive it.

46. The Sheriff has deprived, and continues to deprive, Plaintiff of her rights under the Fourteen Amendment to the United States Constitution. The Sheriff's disparate treatment is the cause in fact of the constitutional violation.

47. Unless restrained by this Court, the Sheriff will continue to treat civilians differently than active military service members. Plaintiff has been and will continue to be irreparably harmed by the Sheriff's denial of Plaintiff's fundamental constitutional right to free speech and denial of equal protection under law.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request the following relief:

A. An order certifying this matter as a class action pursuant to Rule 23, Federal Rules of Civil Procedure;

B. An order declaring the Sheriff's Postcard-Only Mail Policy to be in violation of the First and Fourteenth Amendments to the U.S. Constitution;

C. An order declaring the Sheriff's disparate treatment of allowing active military service members to send letters to Jail inmates while disallowing similarly situated civilians to be in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

D. An order permanently enjoining the Sheriff and his officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with him, from continuing their unlawful Postcard-Only Mail Policy or any other policy that limits incoming inmate mail to postcards;

E. An order declaring the Sheriff's Outgoing Mail Censorship Policy to be in violation of the First and Fourteenth Amendments to the U.S. Constitution;

F. An order permanently enjoining the Sheriff and his officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with him, from continuing their unlawful Outgoing Mail Censorship or any other policy that prohibits outgoing mail containing "obscene language" or outgoing letters that exceed two sheets of paper;

G. An order commanding the Sheriff to provide notice to all current Jail inmates and Jail officials implementing the Sheriff's policies that the Postcard-Only Mail Policy and the Outgoing Mail Censorship Policy are terminated;

H. An order permanently enjoining the Sheriff and his officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with him, from taking retaliatory action against Plaintiff or her husband, inmate Thomas Underwood, for bringing this lawsuit;

I. An order directing the entry of judgment for Plaintiff against Defendants (Sheriff and County) for nominal damages of $1;

J. An award to Plaintiff of reasonable attorneys' fees and costs incurred in connection with this action from the Defendants (Sheriff and County) pursuant to 42 U.S.C. §1988;

K. An order retaining the Court's jurisdiction of this matter to enforce the terms of the Court's orders; and

L. Such further and different relief as is just and proper or that is necessary to make the Plaintiff whole.

Respectfully Submitted,

2/19/13

Benjamin James Stevenson
Fla. Bar. No. 598909
ACLU Found. of Fla.
P.O. Box 12723
Pensacola, FL 32591-2723
T. 786.363.2738
F. 786.363.1985
bstevenson@aclufl.org

Yvette Acosta MacMillan
Fla. Bar. No. 0854300
ACLU Found. of Fla.
P.O. Box 25477
Tampa, FL 33622-5477
T. 813.288.8390
F. 813.289.5694
yacostamacmillan@aclufl.org

Randall C. Marshall
Fla. Bar No.: 181765
ACLU Found. of Fla.
4500 Biscayne Blvd., Ste. 340
Miami, FL 33137
T. 786.363.2700
F. 786.363.1108
RMarshall@aclufl.org

Randall C. Berg, Jr.
Fla. Bar No. 318371
RBerg@FloridaJusticeInstitute.org
Dante P. Trevisani
Fla. Bar No. 72912
DTrevisani@FloridaJusticeInstitute.org
Florida Justice Institute, Inc.
100 SE Second St., Ste. 3750
Miami, FL 33131-2115
T. 305.358.2081
F. 305.358.0910

*Counsel for Plaintiff*