UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JENNIFER UNDERWOOD,

                  Plaintiff,

vs.                                  Case No.  3:13-cv-192-J-34PDB

JIM MANFRE, in his official capacity as
Sheriff for Flagler County, Florida,

                  Defendant.

_____/

# **O R D E R**

**THIS CAUSE** is before the Court on the Unopposed, Renewed Plaintiff's Motion for Class Certification (Doc. 9; Renewed Motion to Certify Class) and the Joint Motion to Preliminarily Approve Consent Decree, Provide Notice to the Class, and Schedule a Fairness Hearing (Doc. 11; Joint Motion for Preliminary Approval), both filed on June 28, 2013.  In the Renewed Motion to Certify Class, Plaintiff requests that the Court certify a class pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure (Rule(s)), appoint Plaintiff's counsel as the class counsel, and designate Plaintiff as the class representative.[1]  Renewed Motion to Certify Class at 2.  Plaintiff informs the Court that Defendant does not oppose the requested relief.  Id.  Additionally, in the Joint Motion for Preliminary Approval, the parties state that they have reached an agreed resolution of all claims in this lawsuit and therefore, jointly request that the Court: (1) preliminarily approve the Consent Decree and Order

_____

[1] On February 20, 2013, Plaintiff filed Plaintiff's Motion & Memorandum of Law for Class Certification (Doc. 4; Motion to Certify Class).  The Court denied the Motion to Certify Class as prematurely filed because Underwood had not yet served Defendant.  See Order (Doc. 6), entered May 23, 2013.  In the Renewed Motion to Certify Class, Plaintiff renews her request for class certification on the same basis as advanced in the original Motion to Certify Class.  See Renewed Motion to Certify Class at 2.

attached to the Motion (Doc. 11-1; Consent Decree), (2) approve and order the distribution of the Notice of Settlement (Doc. 11-2; Proposed Notice) pursuant to Rule 23(e)(1), and (3) schedule a fairness hearing to "consider objections and make necessary findings" as required by Rule 23(e)(2).  <u>See</u> Joint Motion for Preliminary Approval at 1.  The Court conducted two hearings with the parties to address these matters on November 8, 2013, and December 18, 2013.  <u>See</u> Minute Entry (Doc. 21; November Hearing); Minute Entry (Doc. 30; December Hearing).  Following the Hearings, the parties submitted a Joint Notice of Revised Proposed Class Definition and Filing Amended Settlement Documents and Renewed Motions (Doc. 31; Joint Notice) on December 19, 2013.   Accordingly, this matter is ripe for review.

## I.    Background

Plaintiff Jennifer Underwood's husband is detained in the Flagler County Jail (the Jail), located in Bunnell, Florida.  <u>See</u> Complaint (Doc. 1) ¶¶ 1, 11, filed February 20, 2013. Defendant Jim Manfre, in his official capacity as the Sheriff of Flagler County, Florida (the Sheriff), runs the Jail and enforces its policies.  <u>Id.</u> ¶ 1.  Underwood would like to exchange written correspondence with her husband while he is incarcerated.  However, Underwood alleges that her ability to correspond with her husband by mail is unconstitutionally restricted due to certain policies and practices governing inmate mail at the Jail.  <u>Id.</u> ¶¶ 1-2.  Moreover, as the Jail houses approximately 140 inmates at any given time, Underwood maintains that the constitutional rights of other individuals who seek to correspond with inmates are also infringed by the Sheriff's enforcement of these mail policies.  <u>Id.</u> ¶¶ 11, 23.

Specifically, Underwood challenges the Sheriff's "Postcard-Only Mail Policy" which "requires all incoming mail to Jail inmates, except legal or privileged mail, to be in postcard form." Id. ¶ 12. "Legal or privileged" mail constitutes mail "to or from the courts, attorneys, government officials or agencies, and news media." Id. Because of the Postcard-Only Mail Policy, non-privileged individuals who wish to correspond with inmates are unable to send letters, cards, photographs, full-page drawings, newspaper and magazine clippings, photocopied materials, or pages printed from an internet webpage. Id. In addition, individuals are constrained by the limited writing space available on a postcard, as well as the lack of privacy inherent in messages exposed on a postcard. Id. ¶¶ 16-17. Underwood alleges that she would like to write letters to her husband with sensitive, personal information, and send him photographs, drawings, newspaper clippings, and other items. See id. ¶ 19. She maintains that she cannot do so because of the Postcard-Only Mail Policy, and if this policy was lifted, "she would immediately send these letters and enclosures." Id.

Underwood also challenges the "Outgoing Mail Censorship Policy," which "prohibits Jail inmates from sending outgoing letters that exceed two sheets of paper and all outgoing mail that contains 'obscene language.'" Id. ¶ 13. "Obscene language" includes "ordinary swear words." Id. According to Underwood, her husband mailed her a message containing "obscene language" that the Sheriff intercepted and refused to deliver. Id. ¶ 20. Underwood asserts that she wanted to receive that message. Id. In addition, Underwood alleges that her husband would like to send, and she would like to receive, letters that exceed two sheets of paper in length. Id. Underwood contends that the "Postcard-Only Mail Policy" and the "Outgoing Mail Censorship Policy" violate her "First Amendment free speech rights" to

"communicate in a complete and meaningful way with her inmate husband." Id. ¶ 23. Accordingly, in Counts I and II of the Complaint, on behalf of herself and all others similarly situated, Underwood asserts claims for the violation of her free speech rights pursuant to the First and Fourteenth Amendments to the Constitution. See Complaint at 13-14.

In Count III of the Complaint, Underwood also asserts an individual claim under the Equal Protection Clause of the Fourteenth Amendment. Underwood alleges that the Sheriff "will deliver letters to Jail inmates that are sent by active military service members." Id. ¶ 42. Underwood maintains that this is an exception to the Sheriff's general prohibition on incoming letters (the Postcard-Only Mail Policy) because the Sheriff will not deliver letters to Jail inmates that are sent by persons who are not active military service members. Id. According to Underwood, this disparate treatment violates her right to equal protection under the Fourteenth Amendment. Id. ¶¶ 46-47. Underwood does not seek class certification with respect to her equal protection claim.

## II.    Terms of Settlement

The parties have agreed to a resolution of this lawsuit through the Court's entry of a Consent Decree & Order. Upon review of the parties' filings, the Court identified questions and concerns with respect to the initially proposed Consent Decree & Order. The Court discussed these matters with the parties at the November and December Hearings, and thereafter, the parties submitted a Revised Consent Decree (Doc. 31-1). Generally, the terms of the Revised Consent Decree are as follows. First, "[t]he [p]arties agree that the challenged Sheriff's Postcard-Only Mail Policy and Outgoing Mail Censorship Policy are unconstitutional and should not be permitted or reinstated," and the Sheriff has agreed to

repeal those Policies.  <u>See</u> Revised Consent Decree at 2.  As such, the Sheriff will allow Jail inmates to receive correspondence in envelopes from friends, family, and other non-privileged correspondents.  <u>Id.</u> at 5-6.  However, prior to delivering such mail, the parties agree that the Sheriff may remove any stamps or labels, provided that, if the Sheriff removes a return address label, he will notify the inmate and the sender of the removal, and provide the inmate with the return address by other means.  <u>Id.</u>  In addition, except where necessary to preserve internal order and discipline, maintain institutional security, rehabilitate inmates, or prevent the sending of certain enumerated types of dangerous messages, the Sheriff will not restrict: the amount of mail an inmate can send or receive, the number of pages or items included in the envelope correspondence, or "the length, language, content, recipient or source" of the correspondence.  <u>Id.</u> at 6.  The Revised Consent Decree provides that if the Sheriff refuses to deliver a piece of mail, the Sheriff will inform the inmate, as well as the sender of the mail, of the refusal, the reason for the refusal, and provide them with an opportunity to appeal the decision.  <u>Id.</u>

Additionally, the parties agree that the Sheriff will revise his written policies and procedures to comply with the foregoing, and that he will provide notice to the Jail inmates and visitors of the changes to the policies.  <u>Id.</u> at 6-7.  The Revised Consent Decree also sets out procedures governing its enforcement in the event the parties disagree on its interpretation or if the Sheriff fails to comply.  <u>Id.</u> at 7-8.  Notably, the Revised Consent Decree does not provide for any monetary payment or additional relief to any member of the Class, including Underwood.  <u>See</u> Joint Motion for Preliminary Approval at 6.  Additionally, in the absence of any disputes over the enforcement of the Revised Consent Decree, each

party will bear its own attorneys' fees, costs and litigation expenses.  <u>See</u> Revised Consent Decree at 7-8.  Finally, the Revised Consent Decree provides that the Court will retain jurisdiction over this case to enforce its terms.  <u>Id.</u> at 8.

## III.   Motion to Certify Class

Before certifying a class, even where a settlement is involved, a district court must analyze the requirements of Rule 23, Federal Rules of Civil Procedure (Rule(s)).  <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 619-20 (1997).[2]  Indeed, although Defendant does not contest class certification, the Court must still find that the class certification requirements are satisfied.  <u>See</u> <u>Valley Drug Co. v. Geneva Pharm., Inc.</u>, 350 F. 3d 1181, 1188 (11th Cir. 2003).  Pursuant to Rule 23, class certification is appropriate if "(1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the

---

[2] The Court notes that prior to analyzing whether class certification is appropriate, courts must address the threshold question of whether the individual plaintiff has constitutional standing to raise his or her claims. <u>See</u> <u>Griffin v. Dugger</u>, 823 F.2d 1476, 1482 (11th Cir. 1987) ("Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others."). Because standing "implicates the Court's jurisdiction to order the requested relief," the Court must consider Underwood's standing "even in the absence of an express challenge by [the Sheriff]." <u>See</u> <u>Anderson v. Garner</u>, 22 F. Supp. 2d 1379, 1387-88 (N.D. Ga. 1997). To establish standing a plaintiff must show three elements: (1) that he or she has suffered an "injury-in-fact," (2) that there is a "causal connection between the asserted injury-in-fact and the challenged action of the defendant," and (3) that a favorable decision by the court will redress the injury. <u>See</u> <u>Shotz v. Cates</u>, 256 F. 3d 1077, 1081 (11th Cir. 2001) (internal citations omitted).  "These requirements are the 'irreducible minimum' required by the Constitution for a plaintiff to proceed in federal court." <u>Id.</u> at 1081 (quoting <u>Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville</u>, 508 U.S. 656, 664 (1993)) (internal citations omitted).  Additionally, in an action for injunctive relief, a plaintiff has standing only if the plaintiff establishes "a real and immediate–as opposed to a merely conjectural or hypothetical–threat of <u>future</u> injury." <u>See</u> <u>Wooden v. Bd. of Regents of Univ. Sys. of Ga.</u>, 247 F. 3d 1262, 1284 (11th Cir. 2001). A complaint that includes "only past incidents" is insufficient to allege a real and immediate threat of future injury. <u>See</u> <u>Shotz</u>, 256 F. 3d at 1081. The allegations of the Complaint demonstrate that Underwood's ability to correspond in writing with her husband has been, and will continue to be, restricted by the Sheriff's Policies in the absence of Court intervention, <u>see</u> Complaint ¶¶ 18-20, and that, if the Court enjoins the enforcement of these Policies, Underwood would immediately send letters to her husband, and receive letters from him that are currently prohibited under the Policies. <u>Id.</u> ¶¶ 19-20.  Thus, upon review, the Court is satisfied that Underwood has standing to pursue her claims.

claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly." See id. at 1187-88; Rule 23(a)(1)-(4).  A party seeking class certification must establish these four prerequisites to class certification, commonly referred to as the "numerosity, commonality, typicality, and adequacy of representation" requirements, as well as one of the alternative requirements set forth in Rule 23(b).  See Valley Drug, 350 F. 3d at 1188.  "Failure to satisfy any one of these four factors and at least one of the alternative requirements of Rule 23(b) precludes class certification."  Id.  Moreover, a district court cannot substitute its finding that a settlement is fair for the satisfaction of the requisite criteria for class certification.  See Amchem Products, 521 U.S. at 622.

Initially, the Motion to Certify Class and the Consent Decree contained slightly different class definitions.  Compare Motion to Certify Class at 1 with Consent Decree (Doc. 11-1) at 4.  The Court discussed this discrepancy with the parties at the November Hearing, and the parties indicated that they wished to proceed on the definition contained in the Consent Decree.  However, at the December Hearing the Court raised additional concerns with the class definition.  In light of those concerns, the parties filed the Joint Notice in which they request that the Court certify the following Class: "all Florida residents who are current and future friends, family, or non-privileged correspondents of inmates incarcerated or detained in the Flagler County, Florida Jail." See Joint Notice at 2.  The parties incorporated this class definition into the Revised Consent Decree.  See Revised Consent Decree at 4.

**A.    Numerosity**

The proper focus for the numerosity requirement is whether the joinder of all class members would be impracticable in view of their number and all other relevant factors. See Phillips v. Joint Legis. Comm., 637 F. 2d 1014, 1022 (5th Cir. 1981).[3]  Some of the factors courts consider are "the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986).  Significantly, "there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."  See Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (internal quotation omitted) (citing 3B Moore's Federal Practice ¶ 23.05[1] n.7 (1978)).

Here, Underwood asserts that the average daily population of the Jail is 140 inmates. See Motion to Certify, Ex. 1.  Although some inmates will not have any correspondents, it is reasonable to estimate that other inmates will have more than one person corresponding with them.  Moreover, given the fluid nature of the inmate population, resulting in an ever-changing group of individuals who seek to correspond with an inmate, it is impracticable if not impossible to identify future members of the Class.  See Henderson v. Thomas, 289 F.R.D. 506, 510 (M.D. Ala. 2012) ("Moreover, the fluid nature of a plaintiff class – as in the prison-litigation context – counsels in favor of certification of all present and future members."); Holland v. Steele, 92 F.R.D. 58, 62-63 (N.D. Ga. 1981); see also Kilgo, 789

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

F.2d at 878 (finding that numerosity requirement was satisfied where plaintiff "identified at least thirty-one individual class members, and the class includes future and deterred job applicants, which of necessity cannot be identified").  In addition, given that the Jail is a county detention facility located within Florida, one can reasonably infer that a large percentage of the individuals corresponding with the inmates are Florida residents.  As such, the Court has no difficulty in finding that a Class consisting of all Florida residents who are current and future friends, family, or non-privileged correspondents of the Jail's inmates satisfies the numerosity requirement.

    **B.**    **Commonality**

       The second requirement, commonality, demands that there be questions of law or fact common to the Class.  <u>See</u> Rule 23(a)(2).  Notably, "'[a] broad based allegation of civil rights violations typically presents common questions of law and fact.'"  <u>See</u> <u>Lawson v. Wainwright</u>, 108 F.R.D. 450, 455 (S.D. Fla. 1986) (quoting <u>Pabon v. McIntosh</u>, 546 F. Supp. 1328, 1333 (E.D. Pa. 1982)).  Here, the Sheriff's Policies and the reasons supporting those Policies are common facts applicable to the claims of all Class Members.  Likewise, whether those Policies violate the First Amendment rights of the individuals seeking to correspond with inmates is a question of law common to the claims of all Class Members.  Moreover, the Class Members all suffer the same injury in that each Class Member's ability to correspond with an inmate is restricted by the Sheriff's Policies.  Because the constitutionality of these Policies is a question capable of class-wide resolution, the Court finds that the proposed Class meets the commonality requirement.  <u>See</u> <u>Lebron v. Wilkins</u>, 277 F.R.D. 664, 667-68 (M.D. Fla. 2011).

### C.    Typicality

Next, the Court must determine whether Underwood's claims or defenses are typical of the claims or defenses of the Class.  The prerequisites of commonality and typicality both "focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification."  See Prado-Steiman v. Bush, 221 F.3d 1266, 1278 (11th Cir. 2000).  While commonality is concerned with group characteristics of a class as a whole, typicality "refers to individual characteristics of the named plaintiff in relation to the class."  See id. at 1279.  Typicality is satisfied "'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'"  Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984)).  Here, Underwood has legal standing in her own right to bring the First Amendment claims raised in the Complaint.  See supra at note 2.  She asserts that she is damaged by the Sheriff's Postcard-Only Mail Policy and the Outgoing Mail Censorship Policy because her ability to correspond with a Jail inmate is improperly restricted in violation of her First Amendment rights.  Likewise, the claims of the Class Members arise from the same mail policies, and are all premised on the alleged violation of the First Amendment.  Thus, the typicality requirement of Rule 23(a)(3) is also satisfied.  See Ault, 692 F.3d at 1216-17.

### D.    Adequacy of Representation

The fourth prerequisite to class certification set forth in Rule 23(a) requires a demonstration that the representative parties "will fairly and adequately protect the interests

of the class." Rule 23(a)(4). The "adequacy of representation" analysis requires two separate inquiries: "'(1) whether any substantial conflicts of interest exist between the representative and the class; and (2) whether the representatives will adequately prosecute the action.'" See Valley Drug Co., 350 F.3d at 1189 (quoting In re HealthSouth Corp. Securities Litigation, 213 F.R.D. 447, 460-61 (N.D. Ala. 2003)). The Sheriff does not contest Underwood's ability to diligently prosecute this action nor the qualification, experience or competence of Underwood's counsel. Based upon a review of the filings in this case, as well as the representations of Underwood's counsel regarding their resources and experience in similar cases, the Court is sufficiently satisfied that Underwood is acting through competent, qualified and experienced counsel. Additionally, the Sheriff has not suggested that Underwood has any interest that conflicts with the interests of the Class. The Court independently discerns none. Indeed, Underwood and her counsel appear to have achieved an ideal outcome for the Class Members in that the Sheriff has agreed to repeal the objectionable policies entirely. Moreover, neither Underwood nor her counsel will recover any monetary payments from the settlement. Accordingly, the Court determines that Underwood appears to fairly and adequately represent the interests of the Class. Thus, the Court finds that the prerequisites set forth in Rule 23(a) are satisfied.

### E.    Rule 23(b)

Finally, "a class action may be maintained if Rule 23(a) is satisfied" and the action falls within one of three types of class actions recognized in Rule 23(b). See Rule 23(b). Here, Underwood asserts that class certification is appropriate under Rule 23(b)(2). Motion to Certify Class at 12-15. Rule 23(b)(2) allows class certification where: "the party opposing

the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ."  Rule 23(b)(2).  Significantly, the Rule does not require "'that the party opposing the class . . . act directly against each member of the class.  The key is whether his actions would affect all persons similarly situated so that his acts apply generally to the whole class.'"  See Anderson v. Garner, 22 F. Supp. 2d 1379, 1386 (N.D. Ga. 1997) (alteration in original) (quoting 7A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure: Civil § 1775 (2d ed. 1986)).  As such, "'[a]ll the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for one or more of them to seek relief under Rule 23(b)(2).'"  Id. (quoting Johnson v. Am. Credit Co. of Ga., 581 F.2d 526, 532 (5th Cir. 1978)).  Here, the Sheriff's enforcement of the challenged Policies applies generally to the proposed Class.  Moreover, Underwood seeks a declaration that these Policies are unconstitutional and a permanent injunction prohibiting the Sheriff from continuing to enforce these Policies.  If Underwood were to succeed in her challenges, such injunctive and declaratory relief would be appropriate with respect to all members of the Class.  Thus, this case "squarely and easily meets the requirement for certification under Rule 23(b)(2)."  See Lebron, 277 F.R.D. at 668; Welch v. Theodorides-Bustle, 273 F.R.D. 692, 695 (N.D. Fla. 2010); Lawson, 108 F.R.D. at 457-58.

In light of the foregoing, the Court finds that Underwood has satisfied the requirements for class certification and therefore, the Renewed Motion for Class Certification is due to be granted.  As such, pursuant to Rule 23(b)(2), the Court will certify a Class of plaintiffs defined as: "all Florida residents who are current and future friends, family, or non-

privileged correspondents of inmates incarcerated or detained in the Flagler County, Florida Jail," and permit the Class to pursue the claims set forth in Counts I and II of this action.  The Court will appoint Underwood to serve as the Class Representative with her counsel of record serving as Class Counsel.

**IV.     Joint Motion to Preliminarily Approve Settlement**

        **A.     Settlement**

Rule 23(e) provides that a court may approve a proposed class action settlement "only after a hearing and on the finding that it is fair, reasonable, and adequate." <u>See</u> Rule 23(e)(2).   Although, the Court need not make a final determination of the fairness, reasonableness, and adequacy of the proposed settlement at this stage of the proceedings, the Court must make a preliminary finding that the proposed settlement is sufficiently fair, reasonable, and adequate on its face to warrant presentation to the Class Members.  <u>See</u> William B. Rubenstein, Newberg on Class Actions § 11:25 (4th ed.) (citing The Manual for Complex Litigation § 30.41 (3d ed.)) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies...the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.").   Thus, the Court has examined the terms of the proposed settlement in order to make a preliminary determination of whether it appears to be sufficiently fair, reasonable, and adequate to warrant granting the relief requested in the Joint Motion for Preliminary Approval.  The Court acknowledges the parties' representation that the settlement was reached after "extensive, arm's-length negotiations between experienced

counsel, who have concluded that the proposed settlement strikes a reasonable balance between the constitutional rights of the class and the legitimate security concerns of the Sheriff's correctional officials, and is in the best interests of their respective clients and the class as a whole." See Joint Motion for Preliminary Approval at 5. Upon preliminary review, the Court determines that the terms of the Revised Consent Decree appear to be sufficiently fair, reasonable, and adequate to warrant presentation to the Class. Thus, the Court will turn its attention to the question of notice to the Class.

### B.    Notice

Pursuant to Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." To facilitate this obligation, the parties provided the Court with a Proposed Notice (Doc. 11-2) and requested that the Court approve the Proposed Notice for distribution to the Class.[4] Upon review of the Proposed Notice, the Court discussed its questions and concerns with the parties at the November Hearing. Most significantly, the Court found that it was not sufficiently clear from the Proposed Notice that, because the Class is certified under Rule 23(b)(2), Class Members will not have the ability to opt-out of the lawsuit. See Holmes v. Continental Can Co., 706 F.2d 1144, 1156-57 (11th Cir. 1983) ("The general rule in this circuit remains that absent members of (b)(2) classes have no automatic right to opt out of the lawsuit and to prosecute an entirely separate action.").[5] The parties agreed to revise the language in the Notice to

---

[4] The Court notes that because this is a class action promulgated under Rule 23(b)(2), the notice is not subject to the requirements of Rule 23(c)(2)(B). See Rule 23(c)(2)(A)-(B).

[5] Although there are certain exceptions to this rule, as the parties did not provide for an opt-out provision in their proposed settlement, and the relief awarded to the Class does not involve any monetary damages, this
(continued...)

more accurately advise the Class Members how the settlement, if approved, will affect their rights.  In the Joint Notice, the parties submit a Revised Proposed Notice (Doc. 31-2) which largely resolves the Court's concerns.   The Revised Proposed Notice advises Class Members of the nature of the lawsuit, the terms of the proposed settlement, their ability to obtain their own counsel in the matter, the time and manner to object or comment on the settlement, the time and location of the Fairness Hearing, and the binding effect of the settlement on Class Members.  Nevertheless, upon review, the Court found it necessary to make certain additional revisions which are reflected in the Court's edit to the Revised Proposed Notice attached to this Order.  The Court is satisfied that the Revised Proposed Notice, as modified by the Court and attached hereto (hereinafter "Notice"), fulfills the notice requirements of Rule 23.

To distribute the Notice, the parties propose that the Court direct the Sheriff to provide each Jail inmate with a copy of the Notice along with a cover letter requesting that the inmate send the Notice to his or her correspondents.  <u>See</u> Motion for Preliminary Approval at 8.  The Sheriff has agreed to provide envelopes and postage for all mailings of the Notice.  <u>Id.</u>  In addition, the Sheriff will "post the Notice in the Jail lobby and visiting area where inmates' visitors may easily see it."  <u>Id.</u>  The Sheriff has also agreed to provide inmates and their friends and family with additional copies of the Notice as well as a copy of the Revised Consent Decree upon request.  <u>Id.</u>  The Court finds these various methods to constitute a reasonable manner of distributing notice to the Class Members.  However, upon review of

---

[5](...continued)
case does not appear to fall within those exceptions.  <u>See</u> <u>Knight v. Alabama</u>, 469 F. Supp. 2d 1016, 1031 n.2 (N.D. Ala. 2006).

the parties' original Proposed Cover Letter (Doc. 11-3), the Court determined that certain revisions were necessary.  At the November Hearing, the Court discussed these revisions to the Cover Letter with the parties and the parties filed a Revised Cover Letter (Doc. 31-3) with the Joint Notice.  Upon further review, the Court has made additional modifications to the Revised Cover Letter and will direct the parties to use the attached Court's Revised Cover Letter.  In sum, the Court will direct that the parties distribute the Notice to the Class Members, in the manner set forth above, using the Court's Revised Cover Letter.

### C.    CAFA

Finally, the Court recognizes that the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715 imposes additional notice requirements on defendants in class action lawsuits.  The Court discussed these requirements with the parties at the November and December Hearings.  On December 17, 2013, the Sheriff filed a Notice of Filing Copy of Letter to Attorney General, Pam Bondi (Doc. 28) and on December 18, 2013, the Sheriff filed a Notice of Filing Copy of Letter to United States Attorney General, Eric H. Holder, Jr. (Doc. 29) (collectively CAFA Notices).  For the reasons discussed at the December Hearing, and in light of the current formulation of the class definition, these filings indicate that the Sheriff satisfied the CAFA notice requirements as of December 18, 2013.  As such, if the Court determines that final approval of the settlement is warranted, the Court will not enter such an order until after March 18, 2014.  See 28 U.S.C. § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).").

## V.    Conclusion

Upon consideration of the Renewed Motion to Certify Class, the Joint Motion for Preliminary Approval, the Revised Consent Decree, the Revised Proposed Notice, and the Revised Cover Letter, as well as all matters of record, the Court finds that there is good cause to certify the Class, and preliminarily approve the proposed settlement, subject to further consideration by the Court at a fairness hearing.[6]  The Court concludes that the proposed Revised Consent Decree is sufficiently fair, reasonable, and adequate to warrant submitting the proposed settlement to the Class Members and setting a fairness hearing. Thus, the Court determines that it is appropriate to grant the Renewed Motion to Certify Class and the Joint Motion for Preliminary Approval.  Accordingly, it is

**ORDERED**:

1.     The Unopposed, Renewed Plaintiff's Motion for Class Certification (Doc. 9) is **GRANTED**.

2.     The Court, having found that Plaintiff has met the prerequisites to class certification set forth in Rule 23, Federal Rules of Civil Procedure, certifies the following Class with respect to Counts I and II of the Complaint:

> All Florida residents who are current and future friends, family, or non-privileged correspondents of inmates incarcerated or detained in the Flagler County, Florida Jail.

---

[6] At the Fairness Hearing, the parties should provide the Court with a finalized and executed copy of the Revised Consent Decree for the Court's final review.

3.      The Court designates Plaintiff Jennifer Underwood as Class Representative, with Plaintiff's Counsel, Benjamin James Stevenson, Dante Trevisani, Randall C. Berg, Jr., Randall C. Marshall, and Yvette Acosta MacMillan, serving as Class Counsel.

4.      The Joint Motion to Preliminarily Approve Consent Decree, Provide Notice to the Class, and Schedule a Fairness Hearing (Doc. 11) is **GRANTED**.

5.      The Court preliminarily approves the terms of the Revised Consent Decree (Doc. 31-1) as being a fair, reasonable, and adequate resolution of the dispute between the parties.

6.      A final hearing (Fairness Hearing) will be held at **10:00 a.m. on May 2, 2014**, in Courtroom 10B at the United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202,[7] at which time the Court will consider whether the proposed settlement should be finally approved as fair, reasonable, and adequate and whether the Revised Consent Decree should be entered as the Court's final judgment.  The Court may adjourn and/or continue the Final Fairness Hearing without further notice to the Class Members.

---

[7] All persons entering the Courthouse must present photo identification to Court Security Officers. Although cell phones, laptop computers, and similar electronic devices generally are not permitted in the building, attorneys may bring those items with them upon presentation to Court Security Officers of a Florida Bar card (presentation of the Duval County Courthouse lawyer identification card will suffice) or Order of special admission pro hac vice.  However, all cell phones must be turned off while in the courtroom.

7.  The Court preliminarily approves the Court's Notice, attached hereto, for distribution to the potential members of the Class.  The Notice shall be distributed to the Class in the manner discussed in the body of this Order and agreed to by the parties, using the Court's Revised Cover Letter, no later than **January 31, 2014**.

8.  All discovery and other proceedings in this action are stayed until further order of the Court, except as may be necessary to implement the settlement or comply with the terms of the Revised Consent Decree.

9.  The Court may, for good cause, extend any of the deadlines set forth in this Order without further notice to the Class.

10. Each Class Member desiring to object to, or comment on, the Revised Consent Decree shall file with the Court and deliver to Class Counsel a timely written notice of his or her objection or comment.  Such objection shall: (i) identify the case, (ii) contain the name and address of the objector, (iii) describe each objection or comment, and (iv) explain the basis of each objection or comment by providing facts or law.  If the objector, or counsel for the objector intends to appear at the Fairness Hearing, the objection shall also include a notice of intent to appear.  The objection or comment must be both filed with the Clerk of the United States District Court for the Middle District of Florida by the objector, and delivered to Class Counsel.  The objection or comment must be postmarked no later than the deadline for Objections set forth in the Court's Revised Notice.  Class Counsel and the Sheriff's counsel

may, but need not, respond to the objections, if any, by means of a memorandum of law of no more than 10 pages filed and served no later than fourteen (14) days prior to the Fairness Hearing.

**DONE AND ORDERED** at Jacksonville, Florida on January 8, 2014.

MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties